**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Emilie Post-Michalak,<br><br>Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>Defendant. | No. CV-16-01235-PHX-DLR<br><br>**ORDER** |

Plaintiff applied for a period of disability and disability insurance benefits on July 12, 2012, alleging disability beginning August 1, 2010. (A.R. 13.) The claim was denied initially on February 26, 2013, and upon reconsideration on August 5, 2013. (*Id*.) Plaintiff then requested a hearing. (*Id.*) On September 10, 2014, Plaintiff and a vocational expert (VE) testified at a hearing before an Administrative Law Judge (ALJ). (*Id.* at 31-60.) At the hearing, Plaintiff amended her onset date to September 1, 2011. (*Id.* at 34.)

On November 4, 2014, the ALJ issued a decision that Plaintiff was not disabled within the meaning of the Social Security Act. (*Id*. at 25.) Thereafter, Plaintiff requested review of the ALJ's decision by the Appeals Council. (*Id*. at 7-9.) The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision. (*Id*. at 1.) On April 26, 2016, Plaintiff sought review by this Court. (Doc. 1.) After receipt of the administrative record (Doc. 12), the parties fully briefed the

issues for review (Docs. 15, 19, 27). For reasons stated below, the Court finds that Commissioner's decision must be reversed and the case remanded for an award of benefits.

## **BACKGROUND**

To determine whether a claimant is disabled for purposes of the Social Security Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). At the first step, the ALJ determines whether the claimant is engaging in substantial gainful activity. § 404.1520(a)(4)(i). If so, the claimant is not disabled and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. § 404.1520(a)(4)(ii). If not, the claimant is not disabled and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* If not, the ALJ proceeds to step four. At step four, the ALJ assesses the claimant's residual functional capacity (RFC) and determines whether the claimant is still capable of performing past relevant work. § 404.1520(a)(4)(iv). If so, the claimant is not disabled and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where she determines whether the claimant can perform any other work based on the claimant's RFC, age, education, and work experience. § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id.* If not, the claimant is disabled. *Id.*

At step one, the ALJ found that Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2015, and that she has not engaged in substantial gainful activity since September 1, 2011. (A.R. 15.) At step two, the ALJ found that Plaintiff has the following severe impairments: fibromyalgia, obesity, chronic anemia, asthma, affective disorder, anxiety disorder, and learning. (*Id.*) At step three, the ALJ determined that Plaintiff's impairments do not meet or equal the severity of one of the listed impairments in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404. (*Id.*) At step

four, the ALJ found that Plaintiff:

> has the [RFC] to perform light work … except [she] can do occasional postural activities, i.e., climbing, balancing, stooping, kneeling, crouching, and crawling; [she can] have occasional exposure to extreme cold, fumes, odors, dusts, and gases; and [she can] perform simple, routine, and repetitive tasks.

(*Id.* at 17.) The ALJ also found that Plaintiff is capable of performing her past relevant work as a prep cook. (*Id.* at 23.) Because Plaintiff was found to be capable of performing past work experience, the ALJ found Plaintiff not disabled, and the inquiry ended at this step. (*Id.* at 23-24.)

## **STANDARD OF REVIEW**

It is not the district court's role to review the ALJ's decision de novo or otherwise determine whether the claimant is disabled. Rather, the court is limited to reviewing the ALJ's decision to determine whether it "contains legal error or is not supported by substantial evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla but less than a preponderance, and "such relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id.* "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." *Id.* The court, however, "must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" *Id.* Nor may the court "affirm the ALJ on a ground upon which he did not rely." *Id.*

In determining whether the ALJ committed legal error, the district court is bound to apply the legal standards imposed by the law of this Circuit. This includes the requirement that, unless contradicted by another physician, if "the ALJ wishes to disregard the opinion of the treating physician, he or she must make findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983).

**DISCUSSION**

Plaintiff challenges the ALJ's RFC finding, arguing that the ALJ improperly weighed medical opinions and erred in rejecting Plaintiff's and lay witness testimony. (Doc. 15 at 7-25.) Defendant counters that the ALJ properly resolved conflicts in the medical opinions based on substantial evidence, and provided sufficient reasons for finding Plaintiff and lay witnesses not credible. (Doc. 19 at 3.) The parties disagree as to whether any remand should be for an award of benefits or further proceedings.

Having reviewed the record and the parties' briefs, the Court concludes that the ALJ erred in rejecting the opinion of Dr. Michael Fairfax, Plaintiff's treating rheumatologist, and that had the ALJ credited Dr. Fairfax's opinion she would have been compelled to find Plaintiff disabled. Because this conclusion is dispositive, the Court does not reach Plaintiff's alternative assignments of error.

**I. The ALJ Erred in Weighing the Opinion of Dr. Fairfax[1]**

In weighing medical source opinions, the Ninth Circuit distinguishes among three types of physicians: (1) treating physicians, who actually treat the claimant; (2) examining physicians, who examine but do not treat the claimant; and (3) non-examining physicians, who neither treat nor examine the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). More weight generally should be given to the opinion of a treating physician than to the opinions of non-treating physicians because treating physicians are "employed to cure and [have] a greater opportunity to observe and know the patient as an individual." *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987). However, a treating physician's opinion is entitled to controlling weight only if the opinion is well-supported by medically acceptable diagnostic techniques and is not inconsistent with other substantial evidence in the case record. 20 C.F.R. §§ 404.1527(d)(2), 416.927(c)(2). Where a treating physician's opinion is contradicted, it may not be

---

[1] The ALJ and the parties all noted that the document expressing these opinions contains an illegible signature and no printed name. (A.R. at 21; Doc. 15 at 11 n.3; Doc. 19 at 6-7.) Despite noting this issue, the ALJ treated the opinion as one rendered by Dr. Fairfax. (A.R. 21.) The Court will do the same.

- 4 -

rejected without "specific and legitimate reasons" supported by substantial evidence in the record. *Lester*, 81 F.3d at 830.

Dr. Fairfax opined that Plaintiff could: (1) lift and carry less than ten pounds, (2) stand and/or walk less than 2 hours in an 8-hour workday, and (3) sit less than 2 hours in an 8-hour workday. (A.R. 435-38.) He also opined that it was medically necessary for Plaintiff to alternate positions every 20 minutes; that she needed a 5-9 minute rest when she changed position; and that her symptoms cause additional limitations, including pain, fatigue, dizziness, and headaches. (*Id.*) Because Dr. Fairfax's opinions were contradicted by State agency medical consultants (*Id.* at 62-76, 78-94), the ALJ was required to provide specific and legitimate reasons, supported by substantial evidence in the record, for discounting them. The ALJ assigned "little weight" to Dr. Fairfax's opinions because they were: (1) inconsistent with Dr. Fairfax's own treatment records, (2) not supported by longitudinal records, and (3) inconsistent with Plaintiff's reported daily activities. (*Id.* at 21.) These reasons are not supported by the substantial evidence considering the record as a whole.

### A. Inconsistency with Treatment Records

The ALJ found that Dr. Fairfax's opinion contradicted his treatment notes because "Dr. Fairfax . . . noted that [Plaintiff] did not have any muscular or neurological weaknesses." (*Id.*) This explanation is not persuasive. Plaintiff suffered from, among other conditions, fibromyalgia, "a rheumatic disease that causes inflammation of the fibrous connective tissue components of muscles, tendons, ligaments, and other tissue." *Benecke v. Barnhart*, 379 F.3d 587, 589 (9th Cir. 2004). Common symptoms include chronic pain throughout the body, multiple tender, points, fatigue, and stiffness. Thus, the evidence the ALJ considered inconsistent with Dr. Fairfax's opinion actually is consistent with Plaintiff's fibromyalgia diagnosis. That is, fibromyalgia patients manifest normal muscle strength and neurological reactions. The ALJ's stated reason therefore is not supported by the evidence. *Preston v. Sec. of Health and Human Servs.*, 854 F.2d 815, 820 (6th Cir. 1988); *see also Kline v. Colvin*, 140 F. Supp. 3d 912, 921 (D. Ariz.

2015).

**B. Lack of Corroboration from Longitudinal Records**

The ALJ's also discounted Dr. Fairfax's opinions because the longitudinal records contained contrary evidence.[2] (A.R. 21); *see also* SSR 12-2p, 2012 WL 3017612, at *43642 ("longitudinal records . . . are especially helpful in establishing both the existence and severity of the impairment"). The ALJ explained that "even though [Plaintiff] reported severe pain to Dr. Fairfax, none of her other treating doctors noted that [Plaintiff] was in any acute distress" and that Plaintiff's pain was not "severe enough for [her] to seek emergency medical treatment." (A.R. 21.) This rationale is unpersuasive.

The ALJ mischaracterizes the record. Besides Dr. Fairfax, Plaintiff's only other treating physician was her primary care provider, Dr. Dinsdale. Although Dr. Dinsdale did not note acute distress, he observed that Plaintiff experienced "diffuse muscle pain and diffuse joint pain," and noted that her "[s]ymptoms have been progressive and worsening." (*Id.* at 254.) Further, Dr. Dinsdale clearly thought Plaintiff's symptoms severe enough to refer Plaintiff to Dr. Fairfax, a fibromyalgia specialist. (*Id.* at 255.) After Plaintiff began treatment with Dr. Fairfax, Dr. Dinsdale reported that Plaintiff "has been diagnosed with fibromyalgia by rheumatology . . . [and] will continue in treatment with them." (*Id.*)

Moreover, in limiting her analysis of the longitudinal record to "treating doctors," rather than considering the entirety of the medical records, the ALJ excluded a large swath of medical evidence indicative of acute distress. For example, Dr. Lindner, an orthopedic specialist, conducted a new patient consultation with Plaintiff, though he never treated her. During that consultation, Dr. Lindner noted that Plaintiff's pain in her lower extremities ranges from 8/10 to 10/10, with 10 being the most pain, on a constant

---

[2] Notably, the opinion of a rheumatologist, such as Dr. Fairfax, is ordinarily given greater weight than those of other physicians because it is an "opinion of a specialist about medical issues related to [the doctor's] area of specialty." *See* 20 C.F.R. § 404.1527(c)(5); *see also Benecke*, 379 F.3d at 594 n.4. Indeed, "[s]pecialized knowledge may be particularly important with respect to a disease such as fibromyalgia that is poorly understood within much of the medical community." *Benecke*, 379 F.3d at 594 n. 4.

- 6 -

basis. (*Id.* at 426.) Dr. Lindner also noted Plaintiff's pain is "stabbing," and "sharp." (*Id.*) Plaintiff also regularly saw Richard Horn, a nurse practitioner.[3] Horn's notes reflect Plaintiff was in severe pain. (*See*, *e.g.*, 410 (pain recorded as "9-10/10" and sleep interrupted by pain) 450 (pain recorded as "10/10"), 455 (referring Plaintiff to pain management specialist), 478 (pain recorded as "10/10"), 481 (pain recorded as "8-9/10").) An examination of the entire record shows that the ALJ erred in characterizing medical reports to reach the conclusion that Dr. Fairfax's opinion was not supported by the longitudinal records. *See Reddick v. Chater*, 157 F.3d 715, 724 (9th Cir. 1998) (finding error, where, "[i]n essence, the ALJ developed his evidentiary basis by not fully accounting for the context of materials or all parts of the … reports").

### C. Inconsistency with Plaintiff's Daily Activities

Finally, the ALJ found Plaintiff's daily activities inconsistent with Dr. Fairfax's opinions because, if Dr. Fairfax's opinions were correct, "[Plaintiff] would not be capable of the activities she testified to." (A.R. 21.) Plaintiff testified that she attempts to help with chores like vacuuming or dusting, but is unable to complete these tasks without taking 15-20 minute breaks to rest. (*Id.* at 45.) She also testified that sitting or standing for long periods of time causes increased pain. (*Id.* at 43.) Her symptoms also limit her ability to walk. (*Id.* at 40, 43, 45-46 (Plaintiff unable to walk more than three houses down her street, and is only able to walk around her backyard with her dog).) Plaintiff described her pain as occurring "throughout her body," adding that it "hurts," "burns," and "aches." (*Id.* at 42.) In order to relieve this pain, Plaintiff must lie down. She estimated that she takes up to five, thirty-minute naps a day to help with pain and fatigue. (*Id.* at 45.) Although Plaintiff testified that she is able to "occasionally" drive, she only does so for doctors' appointments or when she needs something from the convenience store. (*Id.* at 46.) Otherwise, her daughter does the grocery shopping. (*Id.* at 40.)

---

[3] Agency regulations provide that ALJs "may also use evidence from other sources to show the severity of your impairment(s) and how it affects your ability to work." 20 C.F.R. § 404.1513(d). Nurse practitioners are included in the list of providers that fall under this section. *Id.* at (d)(1).

- 7 -

Notably, the ALJ fails to point to any specific records evidencing Plaintiff engaging in daily activities that contradict the limitations opined by Dr. Fairfax. Without evidence of daily activities that contradict the opinion rendered, the ALJ's reason lacks the requisite specificity.

Moreover, the ALJ's articulated reason is not supported by substantial evidence. The only regular daily activity highlighted by Defendant is the duration Plaintiff is able to sit.[4] (Doc. 19 at 9.) Dr. Fairfax opined that Plaintiff could sit for up to 20 minutes, and Plaintiff testified that she could sit for 30-40 minutes. (A.R. 50, 437.) This discrepancy alone is insufficient to constitute substantial evidence. *Bostwick v. Colvin*, No. 13-cv-1936-LAB, 2015 WL 12532350, at *2 (S.D. Cal. Mar. 30, 2015) (noting that ALJs "must review the whole record; they cannot cherry-pick evidence to support their findings"). Accordingly, because the reasons offered by the ALJ either are not specific or not supported by substantial evidence, the ALJ erred in giving only "little weight" to Dr. Fairfax's opinions.

## II. Remedy

Having decided that the ALJ committed reversible error, the Court has discretion to remand the case for further development of the record, or to credit the improperly rejected evidence as true and remand for an award benefits. *See Reddick*, 157 F.3d at 728. In deciding whether to remand for an award of benefits, the Court considers whether: (1) the ALJ failed to provide legally sufficient reasons for rejecting evidence, (2) the record has been fully developed and further proceedings would serve no useful purpose, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited. *Triechler v. Comm'r of Soc. Sec.*, 775

---

[4] Defendant also raises the fact that Plaintiff rode, by car, to New York for her father's funeral. (Doc. 19 at 9.) This event obviously is a special circumstance and not a regular daily activity. This is corroborated by the fact that Plaintiff did no other travelling in 2012. (A.R. 51.) What is more, there is no evidence that Plaintiff's trip actually conflicted with Dr. Fairfax's opinion. The ALJ did not determine how frequently the vehicle stopped or what level pain Plaintiff was in during the drive. Without this information, the ALJ could not assess whether this trip contradicted with Dr. Fairfax's opinions. The only information that ALJ elicited regarding the trip was its destination and whether Plaintiff drove at any point. (*Id.* at 50-51.)

F.3d 1090, 1100-01 (9th Cir. 2014). All three conditions of the credit-as-true-rule are met here.

First, for the foregoing reasons, the Court finds that the ALJ's decision to discount the Dr. Fairfax's opinions is neither free of legal error nor supported by substantial evidence. Second, because the ALJ's error was not due to a failure to develop the record, further proceedings would not serve a useful purpose. Finally, during the hearing, the VE testified that someone with the limitations assessed by Dr. Fairfax would be unable to perform Plaintiff's past relevant work or other work. (A.R. 57.) Accordingly, if the treating physician opinions were credited as true, the ALJ would be required to find Plaintiff disabled. The Court therefore exercises its discretion to remand for an award of benefits.

**IT IS ORDERED** that the final decision of the Commissioner of Social Security is **REVERSED** and the case **REMANDED** for an award of benefits. The Clerk shall enter judgment accordingly and terminate the case.

Dated this 29th day of September, 2017.

Douglas L. Rayes
United States District Judge